THE WASHINGTON BUILDING AND LOAN ASSOCIATION *vs.* BEAGHEN and others.

A mortgagee of land, holding an assignment of stock as collateral to his mortgage, released the latter, with actual notice of the existence of a subsequent mortgage on the land; *held*, that the prior mortgage was, so far as the right of the subsequent one was concerned, satisfied to the extent of the value of the stock.

On final hearing on pleadings and proofs.

*Mr. O. Jeffery,* for complainants.

*Mr. G. A. Allen,* for the administrators of Mary A. Aller.

*Mr. J. Vliet,* for Creveling, Spangenberg and Cook.

THE CHANCELLOR.

This is a suit for the foreclosure and sale of mortgaged premises in Warren county. There are numerous mortgages on the property. Of these, the first was given to the complainants, by whom it is now held. The next two are dated on the same day; one of 'them was given to Spangenberg and Creveling, and the other to the complainants, and they are still held by those to whom they were given. The fourth was given to Joseph B. Cornish and Benjamin C. Osborn, by whom it was assigned to Oscar Jeffery, who assigned it to the complainants, who now hold it. The fifth was given to Mary A. Aller, (now deceased,) by whose administrators it is now held. The sixth was given to Adam W. Creveling, the seventh to the complainants, and the eighth to Creveling, Spangenberg and Cook, and the mortgagees still hold them. There are other mortgages upon the property, but they are not involved in or affected by the questions in this suit. When the complainants' first mortgage was given, the mortgagor, Beaghen, who was the owner of certain shares of the capital stock of the complainants, assigned to them eight of those shares as collateral security for the payment of the mortgage. After their second mortgage was given, they held them in like manner as collateral to that mortgage also. After the filing of the bill in this cause, Creveling and Spangenberg requested Beaghen to assign those shares to them, and he did so in consideration of the payment by them to him of $12.80, their acceptance of an order upon themselves in his favor for goods to the amount of $100, the payment of the dues and fines in arrear on the stock, $121.66, and their agreement to credit the balance of the price upon their mortgage above referred to as the eighth. The price agreed upon between them and him for the stock was

$782.88. The amount credited on the mortgage, therefore, in respect of the stock, was $548.42. After this transfer had been made, the board of directors of the complainants, as appears by their resolution in their book of minutes, consented to it on condition that Creveling and Spangenberg should execute a bond (to be secured by mortgage) to the complainants, to pay all the mortgages which the latter held, made by Beaghen, with all arrears of interest, and also all fines due them from him. Creveling and Spangenberg accordingly gave to the complainants their bond in the penalty of $3200, and conditioned that they should well and truly pay to the complainants the principal, $1600, of all the bonds and mortgages given by Beaghen, held by the complainants, with all arrears of interest. The condition is prefaced with the statement that the complainants, at the date of the bond, held four bonds and mortgages given by Beaghen, amounting in all to the sum of $1600, for which sum, with arrears of interest, they had then begun suit; and that he had assigned all his interest in their capital stock to Creveling and Spangenberg. It appears, by the testimony, that this bond was given (and it was so understood by the parties to it) as security that the mortgaged premises should, on sale under foreclosure, bring the amount of the complainants' mortgages. By a by-law of the complainants, in force when the consent to the transfer of the stock to Creveling and Spangenberg was given, it was provided that no share should be transferred while any fine or any due of any kind against the owner thereof remained unpaid, nor until the transferree should have assumed all the obligations of the original stockholder to the company. Mary A. Aller's administrators insist that the complainants in thus relinquishing their claim upon the stock, became bound in equity, as between them and the holders of the Aller mortgage, to allow and credit on those of the complainants' mortgages which are prior to that mortgage, the amount of the value of the stock at the time when the consent to the transfer was given. The stock was pledged to the complainants for the payment of their mortgage debts. At the time of consenting to the trans-

fer, they had actual notice of the Aller mortgage, and the holders of that mortgage had an equity to require them to have recourse for the payment of their first and second mortgages to the stock, a fund on which the Aller mortgage was not a lien, before looking to the mortgaged land. *Herbert* v. *Mech. Build. and Loan Assoc.*, 2 *C. E. Green* 497. With knowledge of the equitable rights of the holders of that mortgage in the premises, they relinquished their claim upon the stock as security for the payment of their mortgage debts. That they then had actual notice of the Aller mortgage is shown by the testimony, and indeed, it is not denied. Besides, both Creveling and Spangenberg were directors of the association, and were present at the meeting at which the resolution of consent was passed, and voted in favor of it, and as before remarked, the relinquishment took place after the bill in this cause was filed. As against the Aller mortgage, the complainants' first and second mortgages must be held to have been paid to the extent of the value of the stock at the time of relinquishment.

The mortgage to Cornish and Osborn was, as before stated, the fourth mortgage upon the premises. When it was near its maturity, Beaghen, who then had two shares of the stock of the association in addition to the eight above mentioned, sought a loan from the association upon those two shares, which were then unpledged. It was awarded to him on terms that its re-payment should be secured by the transfer of the Cornish and Osborn mortgage, in order to pay which he desired the loan, and should execute a bond and mortgage to the complainants on the mortgaged premises, and assign to them the two shares of stock as further security. Those of the defendants who are holders of mortgages executed prior to the making of that loan, insist that as the loan was obtained in order to enable Beaghen to pay the amount of that mortgage to the holder thereof, and part of the money was used for that purpose, the mortgage was paid off, and therefore ought not to be set up as a valid and subsisting encumbrance. It was clearly part of the terms on which the loan was made,

that that mortgage, which was then held by Mr. Jeffery, should be assigned to the complainants as security for it. This appears by the resolution of the board granting the loan, and it is evident that Beaghen so understood the matter. The complainants are entitled to the benefit of the security of that mortgage accordingly.